May it please the court, my name is Mike Brim and I represent the appellant at Dow Chemical Company. The issue in this case can be summed up simply, can they or can't they, can the same 664 plaintiffs combined with 4 others to file a case in federal court alleging as one of their two bases for federal jurisdiction that they constitute a mass tort under the Class Action Fairness Act of 2005, then on that same day divide themselves into 7 separate actions, each under 100 plaintiffs, in an attempt to avoid capital jurisdiction in case the causes of action in federal court that they bring fail, which is precisely what happened here. Just as a matter of pure first impression, what is wrong with a plaintiff who is uncertain where proper jurisdiction lies to file in both places, state and federal court? If that were the facts of the case, Your Honor, Your Honor would be correct. But in this instance, where the other case and the other basis, that is the non-kappa basis for jurisdiction, was brought under the Alien Tort Claims Act, there could have been little question that federal jurisdiction was proper. But wasn't the case, the causes of action were completely different? I'm sorry, Your Honor. The causes of action were different. The damages, prayers were different. There were cases by the same people over the same set of facts, but they were under different theories. In the federal court case, they brought different theories of jurisdiction. They brought federal court, an Alien Tort Claims Act only. And they pled for different damages. And they pled for different damages. Although the pecuniary, it's difficult to see how the pecuniary damages would have been different at the end of the day. Why? They included different, they included at least prayers for damages for different matters, for cultural disruption, for genocide and so on. That's right. The actual elements for which they sought damages were different. It would be, it's difficult to understand how the actual result would have been different. But Your Honor is correct. But let me back up a minute. How does this, these cases in State court brought here under CAFA comport just with the Abrego-Abrego opinion? I don't see how there was an allegation with, it seems exactly the same. I don't see how there's an allegation with respect to even one plaintiff adequate to meet the $75,000 under Abrego-Abrego. I will answer your question directly and then say I don't believe that's an issue here. I'm sorry, why? I don't believe that that's an issue here. But let me answer your question directly. If we were attempting to satisfy Abrego-Abrego, it seems. First of all, how can it not be an issue here? It's a jurisdictional question. It is a jurisdictional question. The question, it was not addressed in the district court's order. It wasn't, but it was raised very squarely before the district court. It was raised by the plaintiff's motion to remand but was not addressed by the district court's order. It raises an interesting jurisdictional question under CAFA. I'm not answering your question directly as I promised to because we kind of moved aside, but I promise I will get back to that. CAFA 28 U.S.C. 1453 provides for the interlocutory appellate review of a remand order, something not typically happened, that typically does not happen. The remand order that we filed our petition for permission to appeal with regard to did not address that order. It's not exactly clear to me that the court has jurisdiction over an issue not addressed in that order of remand, which is the only way. Ordinarily, when you have any sort of an interlocutory appeal, it's with regard to the order, not with respect to the issues decided. And the issue was raised, and as in any other instance. But besides which, it's jurisdictional. So I don't see how we don't have the authority to review it. And I'm pleased to, as I promised, I will directly address it. There are two particular facts here that are different than in Brega v. Brega. The first one is the one we were just discussing. These same plaintiffs, these same plaintiffs represented to the district court that they were a CAFA mass action.  But they allege different damages. But at least one of them is claiming $75,000. On a different basis. On a different basis. But at least one of them is. The second thing is. So I don't see how that helps you. No, but they allege a different cause of action which has different basis for damages. And they said on that basis for damages, we are alleging $75,000. But here they're alleging a narrower cause of action with a narrower claim for damages. So how does that help you? The narrower cause of action with the narrower claim for damages is the federal court case, the ATS case. The one in which they are claiming, which they admit that they are claiming at least $75,000. The other thing that is different about this case than in W. Brega is the plaintiff's complaint. These are not the same plaintiff's lawyers. In their complaint, they specifically make note of a judgment in a California court. It's in northern California in the early 80s. So I understand that because it doesn't tell you how many people there were. It doesn't tell you that any one person had $75,000. At the end of the day, though, Your Honor, and let me add one more fact to that. By dividing themselves up in the state court cases, they did. They paid over $2,000 in filing fees where they could have only paid the $380 or whatever it is. All of those, Your Honor, W. Brega, I stood before Your Honor in the W. Brega case and remember it well. And have recounted my... I've been trying to find out what happened to that case. I'd be happy to tell you, Your Honor, if you're curious. There are, W. Brega stands for a simple proposition that I have the burden of proof as the removing party to prove by a preponderance of evidence that subject matter jurisdiction exists. And as the W. Brega court said, that is to show that at least one plaintiff is seeking at least $75,000. I submit to the court that there are three pieces of evidence, the federal court filing alleging capital jurisdiction, the allegation in their pleading citing an earlier judgment for $4.9 billion, and the plaintiff's own action by dividing this clearly in an effort to maximize recovery. Whatever those three things are, Your Honor, they are some evidence. They may not be great evidence, but they are some evidence. The last one has nothing to do with it because even if they're trying to maximize recovery, they're trying to maximize the total recovery. I don't see what it tells you anything about any individual's $75,000. Well, Your Honor, if they weren't trying to maximize total recovery, we could do the math. If they're holding each lawsuit at just under 100 plaintiffs, 99 plaintiffs would be slightly over $7 million. In fact, it would be very close to $7 million. Because they don't want to come to federal court with more than 100 plaintiffs. It has nothing to do with their amount of recovery. I'm sorry, Your Honor. I mean, presumably because they don't want to get to federal court with more than 100 people. And that's precisely correct. All right, but that has nothing to do with the amount of recovery of any individual. It does not. You're right, Your Honor. But, again, my point on that is not the maximizing recovery point. My point is their own actions by dividing themselves clearly are indicating that they don't want to be in federal court, but would like to suggest that they are each going to recover more than $75,000. Each of those three things, Your Honor, is some evidence. There is no other. But it could be, could well be, as it was in Abrego, that down the line it's going to be apparent that it's more than $75,000, and at that point you can remove it. And there's this lifting of the one-year limit in CAFA, which allows you to do that. So it's not terribly efficient, for sure, but it doesn't, this is not the end of the line in that question. And if they're not going to limit their damages, they're eventually going to have a problem. The case could go back to state court, and we could do discovery. I lost this argument with Your Honor once before, but it is, it's even more apparent, given all of the cases that have come down, that Congress did not design a system in CAFA whereby the cases were meant to proceed in state court for a while before they were removed to federal court. Well, they must have. They did lift an otherwise applicable limitation on removal. Let me try it a different way, Your Honor. I didn't, Your Honor and I engaged in a conversation in the Abrego argument about what happens when you get below plaintiffs, below 100 plaintiffs. And I didn't have a very good answer that day. But since then, the 11th. Your best arguments always occur to me. I speak from personal experience. Three weeks after your, or on the plane trip back to Houston. Well, something like that, Your Honor. That's exactly right. But in this case, I'm going to plagiarize it because it comes from the 11th Circuit case in Lowry. And Lowry explained to, explains to us why, why we were missing the point in our discussion before. The $5 million provision is found in a paragraph which deals with the civil action. That is capital extends to civil actions seeking an aggregate of $5 million. And then the $75,000 requirement extends only to individual plaintiffs. And so, contrary to Abrego, if the civil action is seeking more than $5 million, then it is for the federal court to sort through and determine who is and who is not seeking $75,000. Now, I recognize clearly that Abrego is the law in this circuit. I'm the guy that argued that on behalf of Dow. I lost. But Lowry clearly creates this. It's not worth getting into that. I think there are issues about this very confusing statute, as you know. But to go to your other issue, the statute with regard to mass action says that it only applies if a civil action where more than 100 or more persons are proposed to be tried jointly. How is this proposed to be tried jointly? There are two circuit court cases in the country. They don't deal with this provision. Your Honor, I disagree. Certainly, the Seventh Circuit case. But in that one, it was one case. And what he was saying was obviously it's proposed to be tried jointly because there's no other way it could be tried because it's all one case. And you're right, Your Honor. They were 144 plaintiffs. And in fact, they gave the example where you split the two cases into 72 panels of 72 each. Your Honor, there is no question that by dividing their case, the 664 plaintiffs, into seven different actions, they have not, they have separated themselves. Right. So they just don't meet the standard. They didn't propose to be tried jointly. And the statute is written. It's okay if they're consolidated or coordinated solely for pretrial proceedings. So even if the State court were to sua sponte, consolidate it or coordinate it solely for pretrial proceedings, that wouldn't bring it within the statute. And so the interesting question is why, and we know that it can't be if it's joined upon the motion of a defendant. So the only possibility would be if somewhere down the line the State court sua sponte proposed to join them for trial, which hasn't happened, and it's just the statute doesn't apply. Your Honor, on its face, I will concede that the statute doesn't apply. I recognize that every day lawyers stand in front of you and tell you that their interpretation, their understanding, their position is the only way a decision could come out. I'm not here to tell you that today. I'm here to tell you that it is. Most of them lose. Most of them. I'm here to tell you that it is certainly a rational interpretation to say that 100 means 100 and each of these cases have less than 100. And moreover, that if they're going to – it's obviously a burden to you to try seven trials, but it's also a burden to them to try seven trials. And this statute is set up so that, you know, if at some point they don't try seven trials, then they've got a problem. Your Honor, that's where your understanding is astray. No one believes that these cases are going to be tried in groups of 90 either. No one believes that these cases are going to be tried in groups of half of 90. The proposed-to-be-tried-jointly language simply can't mean a literal, physical trial. And that's where both the Seventh Circuit case in Bullard and the Eleventh Circuit in Lowry come down. It has to mean something else. And the reason I – But neither of those – the Sixth Circuit case has nothing to do with this mass action provision, right? Correct. And the Seventh Circuit one is a complete counterexample. So I really think that they're hopelessly not relevant. I disagree, Your Honor. The Sixth Circuit case tells us why it decided the way it did, why it prohibited those plaintiffs from what it called artificially splintering their case into five separate pieces. But this statute addresses essentially the artificially splintering or non-artificially splintering directly. And it says that the defendant's motion to join them doesn't matter. It says the jointer for pre-trial doesn't matter. And it says it has to be proposed to trial direct. So it's addressed here. It's not just ignored. And that's why I started my argument, Your Honor, with saying the issue is can they or can't they? Can plaintiffs so easily evade CAFA? And this issue extends, as we observed in our papers, this issue extends beyond this group of cases. In early December, 30 different cases were filed with 2,485 plaintiffs in this same litigation, the Van Halen worker litigation, in another clear effort to evade CAFA. What you may be telling us is that CAFA was inarticulately drafted or has some flaring holes. But are we in a position to legislate to fill those in? I believe that the Sixth Circuit thought the same thing, Your Honor, that the plaintiffs could have done what they did. Nothing on the face of the statute prohibited the plaintiffs in Freeland from doing that in the Sixth Circuit case. The court did. And that's what we're going to ask you. Well, the statute, in its reference to accepting claims that are joined upon motion of the defendant, what is that limitation supposed to stand for, other than the proposition that once plaintiff has divided them up, it's not up to the defendant to put them back together? That presents an interesting structural question in CAFA, Your Honor. That is an exception to the mass action provisions. And if I could, let me back up. There are, there is a, to the statute as a whole, in 1332D11A and B, or in B, there are two paragraphs, and in little i, there are four exceptions to a class action. This court, in a case called Serrano v. 180 Connect, has found that the plaintiff, that is the party seeking to avoid removal, has the burden of proving those exceptions. The mass action provisions have two additional exceptions, joined on notion of the defendant, or consolidated merely for pretrial purposes. Following Serrano, the plaintiffs had the burden to prove the exception of joined on notion of defendant. They made no effort to do so. On that alone. I'm not sure where that gets us. I mean, the notion of adding up these groups to get it to a total over 100 wasn't proposed by the plaintiff, and it wasn't proposed by the district court, and you're the only person that seems to be advocating it. And I understand you represent the defendants. So why doesn't that cover you? The reason it doesn't, Your Honor, and I don't mean to sound flippant, is because I haven't made a notion to join these plaintiffs. No, you're trying to argue that the court should do it on its own volition. I am asking the court to do it at my urging, no question about it. I'm asking the court to do it because otherwise there will never be a cap of mass action. Did you want to save a little time for rebuttal? I would like to, Your Honor. I see that my yellow light is on. Thanks for coming in. Thank you. We've got a little over two minutes. Ms. Darnell? What happened to Mr. Metzger? Mr. Metzger unfortunately had a mandatory settlement conference, so I'll be filling in for him today. May it please the Court, Katherine Darnell on behalf of plaintiffs of Hallease. This appeal presents a situation in which plaintiffs' counsel was given the option of invoking Federal jurisdiction and made the principal decision not to do so. While defendants would have this court believe that plaintiffs' claims are subject to Federal jurisdiction under CAFA, this simply is not the case, because each of plaintiffs' complaints includes fewer than 100 plaintiffs, and defendants have failed to establish that any one plaintiff seeks damages in excess of $75,000 as required by CAFA. Without meeting these provisions, defendants cannot establish that jurisdiction exists pursuant to CAFA. Would we have discretion to return this matter to district court to conduct discovery on that issue? Or do we have to accept the record as it is? I believe there's two parts to answer your question. The first issue is that these cases have been split to fewer than 100 plaintiffs, so on its face they are not subject to Federal jurisdiction. However, it could be remanded to the district court in order to conduct discovery on the amount and controversy issue. These cases were filed nearly two and a half years ago, and defendants have yet to conduct any discovery regarding the amount of damages that are sought in this case. So without having knowledge of this case. Could they ask for discovery? They've not yet asked. I don't know. The defendants didn't. You raised this issue in district court. Yes. And they didn't say, wait a minute, we want to conduct some discovery. To my knowledge, no. So obviously, as made clear by the provisions of CAFA. But Braco didn't say there couldn't be discovery. And I agree. I agree with you. But they didn't ask for it. They did not ask for it, to my knowledge, no. If it turns out later on that the jurisdictional amount is met, what happens then? Well, again, I think it's If you prove damages in state court for individual plaintiffs, each of them over 75,000, what happens? Again, I think it's a split issue. If it's merely a damages issue, it would be recovered. You could remove under CAFA at a later date. However, the principal issue in this appeal is whether plaintiffs are permitted to divide their cases into fewer plaintiffs than 100 per case. And CAFA explicitly provides that this is the option of Plaintiffs' Counsel to do so by requiring that the claims must be tried, proposed to be tried jointly with 100 or more plaintiffs. And, indeed, Defendants' Counsel just admitted and conceded that they would not propose to try to split the cases that way. I mean, do we know anything about California law with respect to the down-the-line likelihood that these are all going to be consolidated for trial or whether there is any California civil procedure requirement that essentially there will be a consolidated for trial? I'm happy to address that issue. There are cases ongoing on the state court currently that deal with DBCP and plantation workers. The most plaintiffs that have ever been tried jointly in one of these trials is 12. Defendants generally argue that they cannot be tried jointly because of different risk factors for each of the plaintiffs, that it would confuse the jury if you have too many plaintiffs in a given trial. So as these currently sit within California state court, they are not being tried in any greater groups than 12. Are they packaged in some fashion so that examples are picked out with an eye toward resolving a larger group of cases based on what happens at trial of 12 or smaller? I believe that the state court judge has moved some cases grouping them by the actual activity that the workers did at the given locations where they were working. However the notion that the court is actually going to entertain trials of 600 or 700 people in groups of 12 seems pretty far-fetched. That's what's happened so far. And, again, I feel like I'm getting away from the specific provisions that are provided for in TAFA, that this is a plaintiff's election to invoke Federal jurisdiction.  If we knew that there was a California practice or civil procedure rule that said all cases by, you know, involving similar issues will be consolidated for trial, then the absence of any express proposal might not matter because there would be an inherent proposal or an implicit proposal to consolidate for trial. That's what I was trying to find out. And my response is there isn't an explicit rule, and as these have gone so far, again, they're being tried in very, very small groups based on the different injuries. And, again, it brings me to the point, the differences between class actions and mass actions which are provided for within the statute. Congress clearly recognized that there are differences between a class action and a mass action and set forth different provisions regarding those. In a class action you have commonality and claims, and there's a class representative that represents the individuals. And in that instance they're adequate to represent the interests of all of the individuals involved in the lawsuit. A mass action is fundamentally different because each of the plaintiffs suffer from distinct injuries. For instance, in this case the plaintiffs suffer from differing injuries, differing forms of serality. Some of them had children before they were exposed to DVCP. Some of them have never had children. So based on the very essence of the claim that it's a mass action and there's differing injuries, they don't fall within the provisions of a class action. All of the case law that has been relied upon by defendants in this case basically looks to class actions or claims where the plaintiffs actually propose to try 100 or more cases jointly. So the case law in which defendants are relying is completely inapplicable to the present situation. And plaintiffs were provided or given the option to split their claims into different categories or into fewer than 100 plaintiffs. Kagan. But these are not in fact in categories. They're just alphabetically divided. Isn't that right?  And indeed, these claims were split in order to remain in State court. It was a principle decision made by plaintiffs' counsel. It's a clear admission. Again, I think that there's one point that was also made by defense counsel that on the same day that these claims were filed, plaintiffs filed a claim in federal courts pursuant to the Alien Tort Statute. And I want to make sure that the court understands that these claims were completely different, and I believe that you acknowledge the causes of action were different. Crimes of genocide, crimes against humanity, the fundamental rights underlying those causes of action are completely different than State court actions. If we thought that there wasn't a break or a break or problem with pleading, would we still have the option of deciding the case on the other ground? Yes. The fundamental issue on appeal today is whether or not saying it's cafe jurisdiction and there would be absence of cafe jurisdiction on either ground. Yes, absolutely. One is not logically prior to the other or prior under Steele Co. or anything  Absolutely. Both elements are necessary. So one element doesn't make sense. To the plaintiffs, I mean, is it preferable given the way these cases are developing to actually get a ruling on the 100-person issue at this point? I'm not seeing why we need to, frankly. It's interesting that you raise that issue, and I will address it specifically. A tentative ruling was issued by another district court yesterday on this very issue in a different set of cases, not by my firm. Also dealing with DVCP and whether or not plaintiffs are allowed to split their cases in fewer than 100. So this issue is recurring within the district courts currently. And I believe it is an issue that should be decided by this court. The main point being today, though, that removal jurisdiction and removal statutes are strictly construed against removal. And it's the defendant's burden to establish that federal jurisdiction exists in this case. And defendants have simply failed to establish that federal jurisdiction exists because they haven't met either prong provided for under CAFA. The very essence of their notice of removal is essentially to join the claims of more than 100 plaintiffs because without doing so, they don't fall within the jurisdiction of this court. And again, they're also alleging that they have met this $75,000 amount of controversy requirement. And I wanted to address the individual arguments that were set forth by defense counsel. I started to address this issue with the difference between the federal claim that was filed and the state claims. The federal claim involved crimes against humanity and genocide. And again, the fundamental rights that underlie those claims are substantially different than state claims for negligence. Kagan. But where would the damages be different? In the federal case or in the state case? For an individual, yes. For an individual. In the federal case, I believe that we allege that the damages would have been in excess of $75,000. I understand. I'm wondering why you can't transpose from that to the state cases. The state cases are fundamentally different because of the damages that are being sought. In this case, none of the plaintiffs have actually received medical treatment, so they're not seeking medical damages. In addition to that, the plaintiffs are seeking a loss of wages because they haven't lost wages as a result of their injury. They can seek future medical damages, but it's minimum. In addition, they also – none of the plaintiffs are seeking a loss of wage – loss of wages because they haven't lost wages as a result of their injury. So there's fundamental differences between the two claims. And again, plaintiffs generally allege damages in the state claim. They're not certain of what the damages are currently, and defendants haven't conducted discovery on that issue. Roberts. What are the damages? These are concepts. What are we actually talking about in terms of damages in the Federal case, and why shouldn't we – I mean, as I looked at the case, the first instance, it seemed to me the Federal claim for damages was a little more elusive or ephemeral than what there was in the state case. And I know that it's logical to think that if you're making an allegation in the Federal case, you get 75, that it's not logical to infer that at least the state claim is going to be as large. So what's the damage in the Federal case, and how does that compare to the damage in the state case? The damage in the Federal case, I believe it was alleged at $49 million, and I might be off on my number. It was specifically alleged that each plaintiff was seeking more than $75,000. So what's the damage amount to? What's the injury for which you're seeking recompense in the Federal case? It was a violation of a fundamental human right through crimes of genocide and crimes against humanity. What does that mean in English? In English, it means that it's at the essence, it was a violation of the very dignity of a human being. And that violation is more than 75,000. The dignity of a human being is worth more than 75,000, but actual physical injury is not for the same people through the same course of conduct by defendants? Let me step back for a moment, because I think that what I'm getting off of the point here, and the point is that pursuant to Abrego, Abrego, this Court ruled that it's  But it would be insane to close our eyes to the exact same plaintiffs making the exact same claim against the exact same defendants in Federal court in a different complaint and saying in that complaint that we do meet the jurisdictional amounts. So there's got to be some logical explanation for why they're different. Otherwise, you're allowed to say white in one box and black in the other, and judicial estoppel, I think, would preclude that. So what's different? I think I tried to explain that the damages that are sought in the State case are non-economic damages. They're not seeking wage loss. But in the State case, there's punitive damages. There are punitive damages, but punitive damages are discretionary, and Plaintiffs' counsel can't assume that jurors are going to provide a certain amount in alleging and putting forth allegations within their complaint. Isn't there a law about when punitive damages count toward the jurisdictional amount? There is something.  I'm unfamiliar with the law. I apologize. I'm unfamiliar. So how does somebody get damages for a crime against genocide that's different from emotional distress damages, for example? The damages are just fundamentally different. We haven't had that specific conversation with our clients about the damages. I guess based on the international concept of crimes against humanity or genocide, there was that fundamental underlying right and understanding. If you have an injury, how has your client, any one of them, suffered as a result? And how is that suffering different from the suffering alleged in the, what I'll call the State court case that justifies calling one of them over $75,000 and the other one not? The justification is that it's the injury is a violation that is recognized under international law to be How does the injury differ? No matter what label or what cause of action, you're still talking about, as best I can tell, a single kind of injury. How is the injury any different in one case than in the other? In one case, the injury is physical. In another, it's mental. See, the problem, though, is that the physical injury is the one that you're presenting, which seems to be a little less ephemeral, is the one you're saying has less damages attached to it. Can that possibly be correct? The physical injury? In my opinion, the damages attached to that are less. But it's not only the physical injury. You have a motion of distress claim, don't you, in the State cause of action? There is. I do not believe that emotional distress was alleged. I would have to look at the complaint. I have a copy of it and I'd be happy to do so. But I think I'm getting off point generally. Well, it's a point that interests the panel. I can tell. So are you saying that these individuals have a universe of compensable damages, part of which is brought about by the genocide allegations, part of which is brought about by the physical and other damages claimed in the State court action? Yes. That is exactly what I'm saying. They're all part of one pie, but the plaintiffs have chosen to slice off one part of the pie, try it in State court, and another part, try it in Federal court. Yes. That is exactly what I'm saying. And pursuant to the provisions set forth in CAFA, plaintiffs are entitled to divide their claims in order to One question I have about the $75,000 is that we – these people are from a small town in where, Kenya? The Ivory Coast. The Ivory Coast, right. I assume the damages would have to reflect their economic circumstances and not ours. Indeed, defendants typically argue in these cases that what would be a trivial amount in the United States would actually be a significant amount in the United States. There is, by the way, a request for general damages for pain and suffering, mental anguish, emotional distress, shame, loss of self-worth, increased risk of future injury, fear of future injury and disease, disfigurement, diminished quality and enjoyment of life, and other damages in the State cause of action. So I'm really having a hard time seeing how that is different. I mean, in a practical, real-world sense from the genocide, whatever damages you'd get for genocide and or crimes against humanity. And again, this is a specific conversation that would have to be had with the clients as to what they're willing to accept for their injuries. Well, you've made allegations to court, to Federal court, that the damages are in excess of $75,000 for somebody, I guess for all of them. And now you're telling me you don't have a basis for making the allegation in Federal court? No, absolutely. There wasn't. So you've got a basis for making that allegation in Federal court. Why shouldn't that conversation be sufficient for the State court case, too? Because the claims that are in the State court are fundamentally different. Well, that's the question I've now been asking for about 10 minutes, and I still haven't figured out what the different injury is. You get hurt in a car crash. You can call lots of causes of action. You can bring a breach of contract, breach of warranty, tort. It's the same injury. What's the different injury between these two cases? The different – again, I've tried to address it as one as being physical and one as being more mental. But we've just looked at the State court complaint, and we know that includes emotional distress. So what is there in the Federal court claim that justifies saying it has a higher value than the State court case? That it's based on an international level and recognized rights on an international level. No different injury? No different injury. Do you concede the injury is exactly the same? I would concede that the injury is the same. But I think that what's happened is I've gotten away from the points in today's case. Well, I'm not sure that you have, because after all, as Judge Hawkins observed, the points that we care about are the points that you ought to care about. And I'm having a little trouble figuring out if you tell me the injury is exactly the same and you valued it in the Federal court complaint as over $75,000, why we shouldn't think that makes them something that we should pay attention to in the State court case, too? And perhaps it's my essence that the injury itself was the explanation that I was trying to provide is that on an international level, these rights are recognized more so than ordinary State tort law claims. And on that level and on that basis, we valued them as something that was higher. And they're compensable, therefore, in some fashion, but it would still be hard to figure out what that fashion is that is different from the emotional distress injury of what actually happened to these people. That's the problem. I mean, if you say it's a crime against humanity, what's the crime against humanity? Hurting these people, you know, making them sterile, right? That's the crime against humanity. If that's the crime against humanity, or if that's the ‑‑ then that's what's going to have to be measured. I mean, once you move down a level of abstraction, it seems to me you are in pretty much the same place. The point being, though, crime against humanity, genocide, particularly genocide, it's a specific intent crime. It's an intent to harm someone. Okay. So on the very basis of that, it's different than a negligence claim. It's different than a strict liability claim. Yes, the claim is, but what about the injury? In other words, if somebody is subject to genocide, they're dead, all right? They're dead in one way, and they're dead in the other way. And the injury to the person, it seems to me, is you're dead. Right. I think it's the underlying action. I mean, you know, if you look at murder, a specific intent crime, or in criminal law, a specific intent crime is more punishable than a crime that is not based on intent. And I suppose that is the distinction that we draw. Yes, and you may have a better chance of making it out. But if you make it out, what we're trying to get you to tell us is why is the amount of damages you're going to get if you make it out different? When you're in either case, you're dead. Or in either case, you're sterile. Because jurors are more likely to punish a specific intent crime with greater – with a greater amount of damages than – or a specific intent act than a nonspecific intent act like negligence. And that is the fundamental difference between the causes of action. If the injury is the same, can you even proceed in both places at the same time? I mean, are you allowed to split your causes of action for the same injury? You are allowed to split your causes of action because they're injuries under different causes of action and under different statutes. So if I get hurt in a car crash, I could proceed in a tort theory in State court and a contract theory in Federal court and collect both times? Theoretically, yes. No, you can't. Oh, you can't? But the question of whether you can split the cause of action is really a civil procedure question for both courts that hasn't really been raised yet. But you couldn't double-clamp. And I will note that plaintiff's Federal action is no longer pending. It was dismissed under the Alien Tort Statute. The State court actions are the only ones currently proceeding. And I think the important point of today is that CAFA specifically provides that in the instance of a mass action, plaintiffs are entitled to split their causes of action in order to remain in State court to litigate those claims. And that's the express provisions that are set forth in the statute. Roberts. Thank you. Thank you for coming in this morning. Appreciate your argument. Rebuttal? I would like to start where the conversation was just going. At bottom, both plaintiffs' claims in the Federal court ATS case under State court actions, the ones that are at issue here today, are rooted in the allegation that DBCP is gonadotoxic, that is, it causes injury to the male testicles, rendering them incapable from antigenesis, rendering that individual incapable of procreating. That's the allegation in both. In the Federal court case, as the panel has correctly observed, the injury is essentially emotional distress. As Judge Berzon noted, and I knew already, the allegations in the State court case include claims for emotional distress. In addition in the State court case, they raise a claim for the physical injury to the testis. So arguably, the claims in the State court case in this instance are higher. Because if that – if the amount in controversy for that physical injury is worth a dollar, it is a dollar more than the emotional distress. So where we come down to, and it seems to me we've sort of gotten to this place, is whether you can meet your burden with regard to the $75,000 by relying on the fact that the plaintiffs have alleged more than $75,000 in a case where that was never proved up and it was just the case died. And as I said to Your Honor earlier, whatever it is, it is some evidence. The plaintiffs have offered no evidence. Under the embryo preponderance of the evidence test, I prevail. I have some evidence. And if I can't prevail, then no case that alleges personal injuries in California can ever come to this court under this statute. And as I said to Your Honor at the very beginning of my argument in Brega, in the now 210 years since the first Judiciary Act, diversity jurisdiction has never been expanded. CAFA expanded it. The 11th Circuit says it works a sea change to diversity jurisdiction. It's for that reason that this Court should find that these cases are probably properly considered together and that CAFA amounted to this. Well, the second part doesn't follow at all. I mean, you made a pretty good argument on the first on the Brega issue, but I don't see how it has anything to do with the other issue. I believe that's what Freeman stands for, Your Honor. I'm sorry? I believe that's what Freeman stands for, but I see my time is up, and I'm mindful of Judge Hawking's admonitions to other counsel. Thanks for coming in today. Thank you. Have a pleasant trip back. Thank you. Thank you both for coming. A very interesting case. It's submitted for decision, and the Court will stand in recess for the day.
judges: Hawkins, Berzon, Clifton